United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA ROSA MEMORIAL HOSPITAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID MAXWELL-JOLLY, Director of the California Department of Health Care Services <br><br> Defendant. | Case No. 08-5173 SC <br><br> ORDER GRANTING AMENDED MOTION FOR PRELIMINARY <u>INJUNCTION</u> |

**I.   INTRODUCTION**

This matter comes before the Court on Plaintiffs' Amended Motion for Preliminary Injunction. Docket No. 60 ("Am. Mot. for Prelim. Inj."). Plaintiffs are non-contract hospitals in the State of California. See Docket No. 7 ("Am. Compl.") ¶ 6. Defendant David Maxwell-Jolly ("Defendant"), Director of the California Department of Health Care Services ("Department"), filed an Opposition and Plaintiffs submitted a Reply. Docket Nos. 61, 64. The Court granted Defendant's Request for Leave to file a Surreply. Docket No. 67. Ordinarily, the Court would hold a hearing to determine the appropriateness of imposing injunctive relief. However, based on the facts of this case and the case law, the Court finds that the motion is suitable for decision without oral argument. For the reasons stated herein, Plaintiffs' Amended Motion for Preliminary Injunction is GRANTED.

**II. BACKGROUND**

On February 16, 2008, the California Assembly passed Assembly Bill No. 5. Docket No. 18 ("Def.'s Request for Judicial Notice") Ex. C ("AB 5").[1] AB 5 added § 14166.245 to the California Welfare & Institutions Code, which reduces the Medi-Cal reimbursement rate of hospitals not under contract with the State by ten percent. Id. at 21. The relevant code section states that "for acute care hospitals not under contract with the State Department of Health Care Services . . . the amounts paid as interim payments for inpatient hospital services provided on and after July 1, 2008, shall be reduced by 10 percent." Cal. Welfare & Inst. Code § 14166.245(b). It also provides that "[w]hen calculating a hospital's cost report settlement for a hospital's fiscal period that includes any dates of service on and after July 1, 2008, the settlement . . . shall be limited to 90 percent of the hospital's audited allowable cost per day for those services . . . ." Id. § 14166.245(c)(3).

On November 14, 2008, Plaintiffs -- all of whom are non-contract hospitals -- filed a Complaint for Injunctive and Declaratory Relief seeking to enjoin these Medi-Cal reimbursement rate reductions. Docket No. 1 ("Compl.").[2] Plaintiffs are Santa

---

[1] The Court GRANTS Defendant's request for the Court to take judicial notice of AB 5.

[2] Plaintiffs also sought to enjoin the reimbursement reductions authorized by AB 1183, but on April 6, 2009, the Ninth Circuit stayed the rate cuts in AB 1183 pending appeal. Cal. Pharm. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 853 (9th Cir. 2009). Hence, according to Plaintiffs, the only issue to be decided by this Court is whether AB 5 should also be enjoined. Docket No. 60 ("Mem. of P&A in Supp. of Am. Mot. for Prelim. Inj.") at 1.

1  Rosa Memorial Hospital, St. Helena Hospital, Queen of the Valley
2  Medical Center in Napa, SRM Alliance Hospital Services (dba
3  Petaluma Valley Hospital), Central Valley General Hospital in
4  Hanford, San Joaquin Community Hospital in Bakersfield, Lancaster
5  Hospital Corporation, Fountain Valley Regional Hospital and
6  Medical Center, San Antonio Community Hospital in Upland,
7  Children's Hospital at Mission in Mission Viejo, Mission Hospital
8  Regional Medical Center in Mission Viejo, Saddleback Memorial
9  Medical Center in Laguna Hills and San Clemente, Orange Coast
10 Memorial Medical Center in Fountain Valley, Anaheim Memorial
11 Medical Center, Hoag Memorial Hospital Presbyterian in Newport
12 Beach, Heart Hospital of BK, LLC in Bakersfield, and John Muir
13 Health in Concord and Walnut Creek.  Am. Compl. ¶ 6.[3]  On January
14 14, 2009, Plaintiffs moved for a preliminary injunction.  Docket
15 No. 11.  On February 23, 2009, the Court stayed this case pending
16 the Ninth Circuit's resolution of the same issues in other cases.
17 Docket No. 30.  On September 9, 2009, the Court lifted the stay
18 and permitted Plaintiffs to file a new brief in support of an
19 amended motion for preliminary injunction.  Docket No. 59.

21 **III. <u>LEGAL STANDARD</u>**
22      To warrant injunctive relief, a plaintiff "must establish

---

Defendant agrees that Plaintiffs' claims concerning AB 1183 are moot because those cuts have been temporarily enjoined.  <u>See</u> Opp'n at 2 n.2.

[3] According to Defendant, Fountain Valley Regional Medical Center recently converted to contract-hospital status.  Opp'n at 9. If this claim is true, then the injunction granted in this Order does not apply to that hospital.

3

1  that he is likely to succeed on the merits, that he is likely to
2  suffer irreparable harm in the absence of preliminary relief, that
3  the balance of equities tips in his favor, and that an injunction
4  is in the public interest." Winter v. Natural Res. Def. Council,
5  --- U.S. ---, 129 S.Ct. 365, 374 (2008); see also Am. Trucking
6  Ass'ns v. City of L.A., 559 F.3d 1046, 1052 (9th Cir.2009).  "In
7  each case, courts 'must balance the competing claims of injury and
8  must consider the effect on each party of the granting or
9  withholding of the requested relief.'"  Winter, 129 S.Ct. at 376
10 (quoting Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S.
11 531, 542 (1987)).

## IV. DISCUSSION

Plaintiffs seek to enjoin the implementation of AB 5's ten percent reduction in the "allowable cost" reimbursement of non-contract hospitals for inpatient services they provide to Medi-Cal patients.  Mem. of P&A in Supp. of Am. Mot. for Prelim. Inj. at 1.

### A. Likelihood of Success on the Merits

The basis of Plaintiffs' lawsuit is that the Medi-Cal reimbursement rate reductions violate federal law.  Am. Compl. ¶ 2.  State reimbursement plans must ensure that payments are consistent with efficiency, economy, quality of care, and access to care.  See 42 U.S.C. § 1396a(a)(30)(A) (hereinafter § 30(A)). The Ninth Circuit interprets this federal requirement as follows:

> [T]he Director must set hospital . . . reimbursement rates that bear a reasonable relationship to efficient and economical hospitals' costs of providing quality services, unless the Department shows some justification

4

> for rates that substantially deviate from such costs. To do this, the Department must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting.

Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1496 (9th Cir. 1997).

The District Court for the Central District of California already determined that non-contract hospitals were likely to succeed on the merits of their claim that AB 5 conflicts with § 30(A). Indep. Living Ctr. of S. Cal. v. Shewry, No. 08-3315, 2008 WL 3891211, at *2-5 (C.D. Cal. Aug. 18, 2008)(hereinafter "Indep. Living Ctr. I"). The District Court found that:

> [Section] 30(A) creates duties on behalf of the Department, i.e., the duty to consider efficiency, economy, and quality of care when establishing reimbursement rates. . . . [W]hen the State of California seeks to modify reimbursement rates for health care services provided under the Medi-Cal program, it must consider efficiency, economy, quality of care, and equality of access, as well as the effect of providers' costs on those relevant statutory factors.

Id. at *4. The District Court noted there was no evidence the Department considered the relevant factors in making the ten percent reduction. Id. Instead, "AB 5 itself suggests that the only reason for imposing the cuts was California's current fiscal emergency." Id.

On July 9, 2009, the Ninth Circuit affirmed these determinations. Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 651-52 (9th Cir. 2009)(hereinafter

5

1  "Indep. Living Ctr. II").[4]  The Ninth Circuit determined that:

> [I]t is clear that the Director [of the California Department of Health Care Services] violated § 30(A) when he implemented the rate reductions mandated by AB 5.  The Director failed to provide any evidence that the Department or the legislature studied the impact of the ten percent rate reduction on the statutory factors of efficiency, economy, quality, and access to care prior to enacting AB 5, nor did he demonstrate that the Department considered reliable cost studies when adjusting its reimbursement rates.  In the absence of such cost data, the Director could not have complied with § 30(A). . . .

Id. at 652.

Defendant suggests that this Ninth Circuit decision involved different payment reductions than those that are currently before the Court.  Opp'n at 1.  However, both the District Court and the Ninth Circuit considered the rate reductions implemented by section 14166.245, which are the reductions that apply to Plaintiffs in this case.  See Indep. Living Ctr. I, 2008 WL 3891211 at *4; see also Indep. Living Ctr. II, 572 F.3d at 649.  The District Court found that all petitioners, including non-contract hospitals, demonstrated a likelihood of success on the merits that the ten percent rate reductions implemented by AB 5 violated federal law.  Indep. Living Ctr. I, 2008 WL 3891211 at *4-5.  The District Court also determined that most of the petitioners, but not non-contract hospitals and managed care plans, showed irreparable harm.  Id. at *5-10.  On appeal, the

---

[4] Mr. Maxwell-Jolly replaced Sandra Shewry as the Director of the California Department of Health Care Services on April 9, 2009. Indep. Living Ctr. II, 572 F.3d at 649 n.2.

6

1  Ninth Circuit explicitly stated that "[u]nder the standards
2  established in Orthopaedic Hospital, it is clear that the Director
3  violated § 30(A) when he implemented the rate reductions mandated
4  by AB 5." Indep. Living Ctr. II, 572 F.3d at 652. The rate
5  reductions that apply to non-contract hospitals in section
6  14166.245 of the California Welfare & Institutions Code are part
7  of the rate reductions mandated by AB 5. Based on the Ninth
8  Circuit's decision, the Court finds that Plaintiffs are likely to
9  succeed on the merits of their claim that these rate reductions
10 violate federal law.

11  In his Opposition, Defendant points to three documents and
12 argues that "[w]ith these studies in mind, the Legislature
13 expressly considered hospital costs when it drafted AB 5." Opp'n
14 at 4.[5] The first document is the Legislative Analyst's Office
15 ("LAO") Report analyzing the 2008-09 budget. Douglas Decl. ¶ 7,
16 Ex. D ("LAO Report").[6] However, the District Court for the
17 Central District of California has already determined that "all
18 the Legislative Analyst's report shows is that such a report was
19 prepared. Respondent has not shown that the Legislature ever
20 reviewed or considered the concerns raised therein." Indep.

---

[5] This statement in Defendant's Opposition directly contradicts the statement in Defendant's Surreply that "Plaintiffs argue for the first time in their reply brief that the Legislature (not DHCS) has the duty to study proposed Medi-Cal reimbursement rates and provider costs before they are enacted." See Surreply at 2. It is Defendant who argued that the Legislature expressly considered hospital costs when it drafted AB 5. See Opp'n at 4.

[6] Toby Douglas, Chief Deputy Director for health programs at the California Department of Health Care Services, filed a declaration in support of Defendant's July 17, 2009 Supplemental Brief. Docket No. 49.1.

7

Living Ctr. I, 2008 WL 3891211 at *4 n. 10. Similarly, here, Defendant has presented no evidence that the Legislature or the Department ever reviewed or considered this report prior to setting the rate reductions that apply to Plaintiffs. Indeed, nowhere in the LAO Report is there any analysis of non-contract hospital costs. See LAO Report.

The second document is the 2007 California Medical Assistance Commission ("CMAC") Annual Report. Douglas Decl. Ex. C ("CMAC Annual Report 2007"). The Court finds that this report is irrelevant. CMAC is the agency established for negotiating contracts with managed care plans and hospitals under the Medi-Cal program. Id. at 1. The report exclusively concerns contract hospitals, not the non-contract hospitals who are Plaintiffs in this case. See id. at 1-22. Douglas declares that "[t]he 2007 CMAC report would have been the most recent annual report available for the Legislature to review when it enacted AB 5." Douglas Decl. ¶ 6. Defendant presents no evidence that the Department or the Legislature actually considered the report before setting the ten percent reimbursement rate reduction at issue in this case.

The third document is a November 2005 analysis by the Department concerning a similar reimbursement rate reduction in 2004-2005. Douglas Decl. Ex. B ("November 2005 Analysis"). The Douglas Declaration states that "[t]he November 2005 DHCS Rate Analysis was a public document that would have been available for legislators to review." Id. ¶ 5. Defendant presented no evidence that the Department or the Legislature actually reviewed it. Even

if they did, this document does not consider the impact of AB 5 on non-contract hospital costs. See November 2005 Analysis.

Defendant contends that the Department used the four-month period between the enactment and implementation of AB 5 to determine whether the reimbursement reductions satisfied the requirements of § 30(A). Opp'n at 5-8. The Court finds that the evidence presented is not sufficient to support this contention. William Liu declares that the Department conducted an analysis of the impact of section 14166.245 prior to its implementation. Liu Decl. ¶ 4.[7] However, the document submitted to support this claim merely consists of annual estimates of recoupment collected by the PIRL program and percentages of total reimbursement for non-contract hospitals between 1999 and 2005.[8] This document does not support the contention that the Director relied on responsible cost studies when adjusting the reimbursement rates at issue to determine whether these reimbursement rate reductions were consistent with efficiency, economy, quality of care, and access.

Gary Wong also declares that the Department analyzed whether the reduced reimbursement payments would be reasonable relative to

---

[7] William Liu, Chief of the Disproportionate Share Hospital Financing and Non-Contract Hospital Recoupment Section, Safety Net Financing Division, of the California Department of Health Care Services, filed a declaration in support of the Opposition. Docket No. 61-2.

[8] "PIRL" stands for peer grouping inpatient reimbursement limitation. Final Medi-Cal reimbursement for non-contract hospital inpatient services is normally established at the PIRL, which is the lesser of a hospital's (1) customary charges, (2) allowable costs determined by the Department, (3) an all-inclusive rate per discharge limitation, or (4) peer grouping rate per discharge limiation. Liu Decl. ¶ 2.

9

1  hospitals' costs prior to implementation.  Wong Decl. ¶ 5.[9]
2  However, Wong supports his claim by pointing to only two
3  documents.  The first is the November 2005 Analysis that the Court
4  has already found inadequate to show that the Department complied
5  with its statutory obligations.  See Wong Decl. Ex. A.  The second
6  is a one-page, handwritten, summary comparison of how audited
7  allowable costs compared to reported costs for unidentified non-
8  contract hospitals between 2002 and 2005.  See id. Ex. B.  This
9  document is clearly inadequate to show the Department relied on
10 responsible cost studies to determine that the ten percent
11 reduction was consistent with efficiency, economy, quality of
12 care, and access.  The Court finds the Liu and Wong declarations
13 and attached exhibits are not sufficient to show the Department
14 complied with federal requirements.

15     Furthermore, it is clear that the sole motivation for AB 5
16 was budgetary.  The relevant code section begins by stating that
17 "[t]he Legislature finds and declares that the state faces a
18 fiscal crisis that requires unprecedented measures to be taken to
19 reduce General Fund expenditures . . . ."  Cal. Welfare & Inst.
20 Code § 14166.245(a).  The Ninth Circuit has already determined
21 that the record supported the District Court's determination that
22 the Medi-Cal reimbursement rate reductions contained in AB 5 were
23 based solely on state budgetary concerns.  Indep. Living Ctr. II,

---

[9] Gary Wong, formerly employed as Health Program Audit Manager 1 in the Financial Audits Branch, Audits and Investigations Program, of the California Department of Health Care Services filed a declaration in support of Defendant's Opposition.  Docket No. 61-4.  See also Docket 17.5 ("Douglas Decl.") Ex. A Attachment E.

10

572 F.3d at 656. For this reason alone, the Court finds that AB 5 violates federal law. Id. Based on all of the foregoing, the Court concludes Plaintiffs have shown a likelihood of success on the merits.

### B. Irreparable Harm

Dr. Michael L. Vaida declares that collectively Plaintiffs will lose over $13 million per year as a result of the AB 5 rate cuts. Johnson Decl. Ex. 5 ("Vaida Decl.").[10] Defendant objects to Dr. Vaida's declaration and requests that it be stricken. Docket No. 63 ("Def.'s Renewed Objections"). The Court may consider inadmissible evidence on a motion for preliminary injunction so long as the Court gives such evidence appropriate weight. See Indep. Living Ctr. I, 2008 WL 3891211 at *2 n.5. The Court therefore OVERRULES Defendant's objection to Dr. Vaida's declaration and DENIES the request that it be stricken.

However, even if the Court did not accept Dr. Vaida's calculation of the non-contract hospitals' losses, there can be no dispute that the ten percent reimbursement rate reductions implemented by AB 5 will result in monetary losses for Plaintiffs. Defendant provides data indicating the reduction will result in decreased revenues for Plaintiffs of between 0.1% and 4.2%, depending on the hospital. See Opp'n at 9-10.

Ordinarily, monetary losses do not constitute irreparable

---

[10] Dean L. Johnson, attorney for Plaintiffs, filed a Declaration in Support of the Amended Motion for Preliminary Injunction. Dr. Vaida's declaration, which was previously filed in in this case as Docket No. 48, pp. 62-65, is attached as Exhibit 5 to Johnson's Declaration.

11

harm.  L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).  However, the Ninth Circuit recently determined that reductions in Medi-Cal revenue payments to hospitals constitute irreparable harm if a requested injunction is not granted because the Eleventh Amendment sovereign immunity of the Department bars hospitals from ever recovering damages in federal court against the Department if they are successful on the merits of their case.  Cal. Pharm. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 850-52 (9th Cir. 2009).[11]  Accordingly, the Court finds that Plaintiffs have shown irreparable harm.

Defendant accuses Plaintiffs of waiting too long to seek a preliminary injunction and, as a result, Defendant claims that Plaintiffs are not entitled to a finding of irreparable harm.  Opp'n at 8-9, 21.  Here, however, the Court stayed this case pending the Ninth Circuit's resolution of the same issues in other cases.  See Docket No. 30.  Now that the Ninth Circuit has clarified the standard of irreparable harm that applies in a case where health care providers are challenging Medi-Cal reimbursement rate reductions, the Court finds that Plaintiffs have shown

---

[11] The Ninth Circuit's articulation of the irreparable harm standard in Californa Pharmacists Association was made in the context of deciding whether to issue a stay of Medi-Cal reimbursement rate cuts that the District Court had declined to enjoin.  563 F.3d at 849-50.  The four factors considered by the Ninth Circuit are the same as the four factors a District Court must consider when ruling on a motion for a preliminary injunction. See id.  Furthermore, both a stay of a state action pending appeal and granting a preliminary injunction in this context produce the same result: both temporarily enjoin Medi-Cal rate reimbursement reductions.  Hence, the Court adopts the standard of irreparable harm articulated by the Ninth Circuit in Californa Pharmacists Association.

1 irreparable harm as a result of the ten percent rate reduction.

**C. Balance of Equities and Public Interest**

Defendant points out that California's fiscal situation remains precarious. Opp'n at 22. The Court is mindful of the budgetary difficulties facing the State of California. However, the Ninth Circuit has already held with respect to AB 5 that "[s]tate budgetary considerations do not . . . in social welfare cases, constitute a critical public interest that would be injured by the grant of preliminary relief. In contrast, there is a robust public interest in safeguarding access to health care for those eligible for Medicaid." Indep. Living Ctr. II, 572 F.3d at 659. Based on these considerations, the Ninth Circuit determined the District Court did not abuse its discretion in concluding that the balance of hardships and public interest weighed in favor of enjoining implementation of the ten percent rate reduction required by AB 5. Id.

Here, an AB 5 rate reduction is also before the Court, and therefore the same considerations apply. While, as Defendant points out, "an injunction would require policymakers to revisit possible program cuts," Opp'n at 22, the Court must also take into consideration the threat to the health of Medi-Cal recipients created by a reduction in non-contract hospital reimbursement rates, and the public interest in ensuring access to health care. The Ninth Circuit has already determined that "it would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." Cal. Pharm. Ass'n, 563 F.3d at 852-53. The Court finds that the balance of

equities and the public interest weigh in favor of granting the injunction.

## V. **CONCLUSION**

For the reasons stated above, the Court GRANTS the Amended Motion for Preliminary Injunction. It is hereby ORDERED that, as of the date set forth below, Defendant Maxwell-Jolly, Director of the California Department of Health Care Services, is preliminarily enjoined from continuing to implement and apply the ten percent reduction in the "allowable cost" reimbursement of the Plaintiffs for the inpatient services they provide to Medi-Cal patients.

The Case Management Conference set for Friday, November 20, 2009, remains on calendar. The parties shall appear at 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

IT IS SO ORDERED.

Dated: November 18, 2009

UNITED STATES DISTRICT JUDGE

14